## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RUSH WILSON,**

        **Petitioner,**

                                **Case No. 1:04-CV-771**
**v.**                               **Hon. Wendell A. Miles**

**MARY BERGHUIS,**

        **Respondent.**

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.       Background

Following a jury trial, petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC I), M.C.L. § 750.520(b)(1)(a), for acts committed against his then six-year-old daughter. He was sentenced to concurrent terms of five to 15 years imprisonment on each count. Petitioner's counsel presented the following issues in his direct appeal to the Michigan Court of Appeals:

    I.      Did the prosecutor deprive [petitioner] of his state and federal constitutional due process rights to a fair trial by eliciting evidence that [petitioner] failed to pay child support, and does defense counsel's failure to object constitute ineffective assistance of counsel?

    II.     Was [petitioner] denied his state and federal constitutional right to due process by the prosecutor's inflammatory rebuttal argument?

    III.    Was [petitioner] denied his Sixth Amendment right to an impartial jury where the jury's verdict was coerced by the trial court's comments during deliberations?

> IV.  Is [petitioner] entitled to have his presentence report corrected and sent to the Department of Corrections?

*See* docket no. 25.

> Petitioner raised two additional issues in his "pro per supplemental brief on appeal":

> V.  The jury denied [petitioner] of his state and federal constitutional due process right to a fair trial by deliberating on hearsay evidence which the court instructed them not to consider.

> VI.  [Petitioner was] denied his state and federal constitutional due process rights to a fair trial by defense attorney['s] inability to disclose relevant evidence to prove if [the victim] was with [petitioner] as proposed by [the prosecutor] which constitutes ineffective assistance of counsel.

*Id.*

The Michigan Court of Appeals affirmed petitioner's convictions, but remanded the matter to the Wayne County Circuit Court to correct inaccurate information on the presentence report. *People v. Wilson,* No. 228263 (Mich. App. July 16, 2002). Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court raising Issues I, II, III, V and VI, which was denied. *People v. Wilson*, No. 122232 (Mich. March 31, 2003).

Petitioner subsequently filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*, raising three issues: the jury denied him due process by relying on hearsay evidence; defense counsel was ineffective for failing to prove that the victim was not with petitioner; and, that defense counsel was ineffective for using an unsound trial strategy. The trial court denied the motion. *People v. Wilson*, No. 99-010539-01 (Wayne Cir. Ct. June 2, 2004). Petitioner did not appeal the trial court's order.

Petitioner filed his habeas petition on November 17, 2004. The petition was returned to him for numerous deficiencies. He raised the following issues in an amended petition:

2

I.     The prosecutor deprived [petitioner] of his state and federal constitutional due process rights to a fair trial by eliciting evidence that [petitioner] failed to pay child support, and defense counsel's failure to object constitutes ineffective assistance of counsel.

II.     [Petitioner] was denied his state and federal constitutional right to due process by the prosecutor's inflammatory rebuttal argument.

III.     [Petitioner] was denied his Sixth Amendment right to an impartial jury where the jury's verdict was coerced by the trial court's comments during deliberation.

IV.     The jury denied [petitioner] his state and federal constitutional due process right to a fair trial by deliberating on hearsay evidence which the court had instructed them not to consider.

V.     [Petitioner was] denied his state and federal constitutional due process rights to a fair trial by [his] defense attorney['s] inability to disclose relevant evidence to prove if [the victim] was with [petitioner] as proposed by opposing party which constitutes ineffective assistance of counsel.

**II.     Standard of review under 28 U.S.C. § 2254**

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Petitioner has exhausted the five issues raised in his amended petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

4

### III.     Petitioner's habeas claims[1]

### A.     Ineffective assistance of trial counsel

First, petitioner contends that his trial counsel was constitutionally ineffective because she failed to object to testimony that petitioner failed to pay child support. In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland,* 466 U.S. at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense," nor does it guarantee the accused "an excellent lawyer."  *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, *5 (6th Cir.

---

[1] The court notes that the response filed in this case by the Michigan Attorney General inadequately fails to address most of petitioner's claims.

1998).  Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances."  *United States v. Boone*,  437 F.3d 829, 839 (8th Cir.) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, 127 S. Ct. 172 (2006).

The Michigan Court of Appeals addressed petitioner's claim as follows:

Defendant first argues that trial counsel was ineffective for failing to object while the prosecutor elicited evidence that defendant failed to pay child support. We disagree. "To prove a claim of ineffective assistance of counsel ..., a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense so as to deny defendant a fair trial." *People v. Smith*, 456 Mich. 543, 556; 581 NW2d 654 (1998). Defendant must overcome the presumption that the challenged action constituted sound trial strategy. *People v. Stanaway*, 446 Mich. 643, 687; 521 NW2d 557 (1994). Because defendant failed to move for either a new trial or a *Ginther* [FN1] hearing, our review of his claim of ineffective assistance of counsel is limited to the existing record. *People v. Nantelle*, 215 Mich.App 77, 87; 544 NW2d 667 (1996).

We find that defense counsel opened the door regarding defendant's non-payment of child support in her opening statement when counsel argued that the charges were fabricated in retaliation for defendant's failure to pay child support. Accordingly, it was proper for the prosecutor to ask the victim's guardian about child support during direct examination. *People v. Yarger*, 193 Mich.App 532, 539; 485 NW2d 119 (1992). Additionally, because defendant's non-payment of child support was relevant to defendant's theory of the case, the prosecutor's use of it did not prejudice defendant or inflame the jury. Therefore, there was no miscarriage of justice and defendant was not denied his due process rights through the presentation of this evidence.

[FN1.] *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973).

*People v. Wilson*, No. 228263, slip op. at 1-2.

Both the prosecutor and defense counsel identified witness credibility as a central issue in this case.  Trial Trans. II at 69-93 (May 31, 2000) (docket no. 20).  In her opening statement, defense counsel discussed the nature of the victim's claims, pointing out that petitioner's failure to pay child support was not an important consideration:

6

You will hear testimony that the mothering skills with Karen Howard [the victim's mother] were very inadequate and as indicated by the prosecution that is why she spent most of her time, that is [the victim], being raised by her maternal grandmother, Constance Howard.  These are all very important because it's very important to understand that as testimony comes forward the first person who brings forward this information of [the victim] being sexually assaulted is the maternal grandmother, Constance Howard.  Now, you need to understand that Constance Howard doesn't too much care for [petitioner].  Constance Howard thinks that [petitioner] has not done right by her daughter, Karen Howard, and has not done right by [the victim].  And you will hear evidence and testimony that says that [petitioner] was not by a choice [sic] of any imagination an ideal father, but again staying focused on the important facts in this case, you need to stay focused on the fact that this is about the life of [petitioner] also.  This is about his life and this is about the idea that you are not making judgements of him as a parent, you are to decide on the facts and the nature and the quality of the evidence that comes forward whether or not you believe beyond a reasonable doubt that he actually sexually assaulted his own flesh and blood.  <u>So, I need you to stay focused on the idea that it's not whether [petitioner] was this impeccable parent.  It's not about whether or not he continued to pay child support.</u>  It's not about whether or not, even if you believe [the victim], a young innocent eight year old have [sic] a reason to lie about such heinous things.  What this is about is whether you believe her . . .  [I]t's important that you understand that relationship between Constance Howard and [petitioner].  It's important that you understand the relationship between Karen Howard and [petitioner], that is the mother.  It is important that you understand these relationships, because there is that ole [sic] saying that says "Hell has not furry [sic] like a woman scorned."  And in this case you have a situation where Karen Howard was not the chosen mate after she gave birth to the child of [petitioner].

*      *      *

You have situation where Constance Howard was very angry about the idea that her child had been jilted or that her grandchild was not been [sic] properly cared for, and that Constance Howard was very angry about these things.

Trial Trans. I at 120-22 (May 30, 2000) (docket no. 19) (emphasis added).

Petitioner's failure to pay child support was raised only briefly at trial.  Constance Howard testified that she once complained that petitioner "should be a father every day, not just at Christmas time" and that she knew petitioner was not paying child support.  *Id.* at 154. On cross-examination, she testified that petitioner was very involved in the victim's life, other than paying

child support. *Id.* at 163. Defense counsel anticipated this testimony and used it petitioner's benefit, by suggesting in the opening statement that Constance Howard was angry at petitioner and encouraged the victim to bring the sexual assault claim against him. Under these circumstances, it was reasonable for defense counsel not to object to Connie Howard's brief testimony regarding petitioner's non-payment of child support.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B.    Prosecutorial misconduct

Next, petitioner contends that the prosecutor engaged in misconduct by making inflammatory statements in her closing rebuttal argument and that the trial court failed to give a cautionary instruction to the jury with respect to this statement. "Habeas relief is warranted when the prosecutor's conduct was so egregious so as to render the entire trial fundamentally unfair." *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002) (internal quotation omitted). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). The appropriate standard of review for a

prosecutorial misconduct claim on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.*

The court must apply the harmless error standard in determining whether prosecutorial misconduct mandates habeas relief.  *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 1992).  The Sixth Circuit has adopted a two-step approach for determining whether a prosecutor's remarks violated a criminal defendant's due process rights.  *Macias*, 291 F.3d at 452.  First, the court must consider whether the prosecutor's conduct and remarks were improper.  *Id.*   Second, if the remarks were improper, then the court should consider four factors to determine whether "the impropriety was flagrant" and thus violated the defendant's due process rights: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or to prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or  accidentally made; and (4) whether the evidence against the defendant was strong.  *Id.* (internal citations and quotations omitted).

By way of background, defense counsel's closing argument suggested that the six-year-old victim had a history of sexual behavior and that the prosecutor was hiding important evidence from the jury:

> Let's be honest with our own life experience. . .   [H]ow many children have you seen in our school systems who know more about sex than we do.  Let's be honest about this.  So, don't make it seem like [petitioner] must have done this, because [the six year old victim] knew something about sexual relations.
>
> See, what [the prosecutor] won't tell you is that there are many things that weren't said in this courtroom.  There are many things we can't talk about.  We have to talk about just the allegations of this case.  We can't talk about the history of the relationships between family members in detail.  We can't talk about the history of [the six year old victim] and her behavior.  We can't talk about those things in the courtroom.  We can't talk about it.  So, let's be honest about what actually came from that witness stand.

Trial Trans. II at 86-87.  The prosecutor made the following argument in rebuttal:

> Then [defense counsel] I think is suggesting to you that there's some things that we kept hidden from you about [the victim].  I don't know what those things she's referring to are.  Maybe she's trying to say that she was a six year old slut.  I submit to you that's ridiculous.

Trial Trans. II at 94.  Defense counsel immediately objected and the trial court sustained the objection.  *Id.*

The Michigan Court of Appeals addressed this issue as follows:

> Defendant next argues that during closing rebuttal argument, the prosecutor made an inappropriate comment that was clearly calculated to inflame the jury and invoke sympathy for the alleged victim. We disagree. The test for determining prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v. Watson*, 245 Mich.App 572, 586; 629 NW2d 411 (2001). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v. Schutte*, 240 Mich.App 713, 721; 613 NW2d 370 (2000). "Where impermissible comments are made by a prosecutor in response to arguments previously raised by defense counsel, reversal is not mandated." *People v. Vaughn*, 200 Mich.App 32, 39; 504 NW2d 2 (1993). Otherwise improper prosecutorial remarks might not require reversal if they address issues raised by defense counsel. *Id.* Further, the record indicates that the trial court instructed the jury that the arguments of the attorneys were not evidence.
>
> We find no error requiring reversal. While the language of the prosecutor's comment was arguably intemperate, there is no evidence that the comment was made "with no apparent justification except to arouse prejudice." *People v. Bahoda*, 448 Mich. 261, 266; 531 NW2d 659 (1995). Rather, it is clear that the comment was made in response to a questionable implication raised about the victim in defendant's closing argument. Further, the trial court immediately sustained defendant's objection to the comment. Under the circumstances, we do not believe that defendant was denied a fair trial by this brief comment; we do not believe that the comment was so inflammatory and harmful as to divert the jury's attention from deciding the case on the merits. *Id.* at 266-267.

*People v. Wilson*, No. 228263, slip op. at 2.

The undersigned agrees with the state appellate court's conclusion that the prosecutor's statement was "arguably intemperate" but not improper under the circumstances here.

10

While a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors, she is granted wide latitude to state her position in closing arguments. *Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006), *cert. denied* 127 S. Ct. 1376 (2007). Here, defense counsel suggested that the prosecutor hid evidence from the jury and that the six year old victim knew "more about sex" than an adult. Defense counsel's conduct is relevant in determining whether the prosecutor's remarks unfairly prejudiced the defendant. *See United States v. Young*, 470 U.S. 1, 11-13 (1984). When defense counsel's remarks invite a response, the prosecutor may respond in order to "right the scale." *Id.* Here, defense counsel's arguments regarding the hidden evidence of the victim's sexual experience invited a response from the prosecutor to "right the scale." *See id.*

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

### C.    Trial judge coerced the jury

Next, petitioner contends that the trial judge coerced the jury. On June 1, 2000, the first full day of jury deliberation, the jury sent the judge the following note:

> Is is possible to have clarification from the doctor's testimony of where the grandmother, [the victim] indicated to her she had spent the previous ten days, with [petitioner] or with the mother, with Felicia or Althea?

Trial Trans. III at 3 (June 1, 2000) (docket no. 22). The court gave the jury a two-part answer. First, the court reminded the jury that the parties had entered into a stipulation "[t]hat the grandmother had no information if and when the abuse occurred." *Id.* at 3. Second, the court reminded the jury that

11

the grandmother's testimony regarding where the victim stayed was hearsay and could not be considered.  *Id.*

The trial court was concerned that the jurors would eventually want to replay the whole trial (which involved five witnesses) and that the deliberations would continue through Saturday, June 3rd, at which time Juror No. 1 would be unavailable until June 8th.  *Id.* at 5.  When the judge suggested re-convening on June 12th, an unidentified juror stated that he or she would be on vacation.  *Id.*  Then, Juror No. 3 stated, "[t]hat will be a hardship for me, I can't come back."  *Id.* at 5-6.  The trial court's admonished Juror No. 3, stating "Ma'am, if I say you do, you're going to come back or if you don't these Wayne County Sheriffs will be out to your house and put you in lock up to bring you back."  *Id.* at 6.  The trial court advised the jury that if they have exhausted their memory, and they needed the grandmother's testimony played back, then they would have to return on June 12th.  *Id.* at 6. When Juror No. 9 suggested that they listen to the doctor's testimony, the trial court requested the jurors to exhaust their collective memory with respect to the grandmother's testimony before addressing the doctor's testimony.  *Id.* at 6-7.

Later in the day, the jurors sent the trial court a note stating that they had exhausted their memories with respect to the doctor's testimony and requested to hear it.  *Id.* at 7.  The tape was inaudible, so the court arranged to have a transcription prepared.  *Id.* at 7-11.  Juror No. 10 stated that he or she was unavailable until June 19th.  *Id.* at 8-9.  The court asked the jurors to continue deliberating for the rest of the afternoon. *Id.* at 9.  The jurors returned on Friday, June 2nd, received a transcript of the doctor's testimony, and reached a verdict that morning.  Trial Trans. IV at 3 (June 2, 2000) (docket no. 23).

The Michigan Court of Appeals addressed the "jury coercion" issue as follows:

We also reject defendant's assertion that he was denied his state and federal constitutional right to be tried by an impartial jury because the trial court coerced a hasty verdict by telling the jury that deliberations would continue at a later date even though that would disrupt some jurors' vacation plans and that if they did not return, the sheriff would lock them up. A criminal defendant has a right to be tried by a fair and impartial jury. US Const, Am VI; Const 1963, art 1, § 20; *People v. Daoust*, 228 Mich.App 1, 7; 577 NW2d 179 (1998). Claims of coerced verdicts are reviewed case by case, and all the facts and circumstances, as well as the particular language used by the trial court, must be considered. *People v. Pizzino*, 313 Mich. 97, 103; 20 NW2d 824 (1945); *People v. Malone*, 180 Mich.App 347, 352; 447 NW2d 157 (1989).

The alleged coercion came when the court was discussing with the jury the schedule for deliberations. The court indicated that the jury would be called to deliberate on June 12, 2000. When one juror indicated that it would be a hardship for her to come back that day, the court responded: "Ma'am, if I say you do, you're going to come back or if you don't these Wayne County Sheriffs will be out to your house and put you in lock up to bring you back." Because defendant failed to raise an objection to the court's comments, we review for plain error. *People v. Carines*, 460 Mich. 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain ..., 3) and the plain error affected substantial rights.... The third requirement generally requires a showing of prejudice ...." *Id.* at 763. Further, if the three elements of the plain error rule are established, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence." ' *Id.*, *quoting United States v. Olano*, 507 U.S. 725, 736-737; 113 S Ct 1770; 123 L.Ed.2d 508 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160; 56 S Ct 391; 80 L Ed 555 [1936] ).

While we agree that there was no pressing need for the court to tell the juror involved that she would be locked up if she did not show up on June 12, we do not believe that this singular comment coerced the jury into arriving at a guilty verdict. The record does not show that the court's comments were strategically intended to coerce the jury to reach a hasty verdict or discouraged further deliberations. *Malone, supra*; *People v. London*, 40 Mich.App 124; 198 NW2d 723 (1972). Further, regardless of their propriety, defendant has failed to establish the requisite prejudice for this unpreserved error. The record shows that the jury returned the next day, and after being given a transcript of requested testimony (*see* discussion *infra* p \_\_\_), reached a verdict. Additionally, the record does not establish that defendant was actually innocent or that the alleged error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's

13

innocence." ' *Carines*, *supra* at 763-764, quoting *Olano*, *supra* at 736-737 (quoting *Atkinson*, *supra* at 160).

*People v. Wilson*, No. 228263, slip op. at 2-3.

   Under the AEDPA, the court can review a trial court's supplemental jury instruction to determine whether it was coercive "in its context and under all circumstances." *Mason v. Mitchell*, 320 F.3d 604, 641-42 (6th Cir. 2003), quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965). In evaluating the coercive effect of a judge's statement to the jury, the court must consider whether the charge was "likely to give the jury the impression that it was more important to be quick than to be thoughtful." *Valentine v. United States*, 488 F.3d 325, 336 (6th Cir. 2007), quoting *United States v. Markey*, 693 F.2d 594, 597 (6th Cir. 1982).  Here, the trial court accommodated the jurors by providing an expedited transcript and offering to reconvene deliberations on June 19th if necessary.  A judge's statement to the jury that "if it did not reach a verdict by a certain time, it would have to return to deliberate at a supposedly undesirable time," is not sufficient to demonstrate coercion. *Valentine*, 488 F.3d at 336; *Markey*, 693 F.2d at 594.  In addition, I find that the trial court's statement to Juror No. 3 was not coercive, but merely a plain-spoken reminder to the jurors of their duty to deliberate and the court's ability to enforce the jury summonses.  Under these circumstances, the court's statements were not "likely to give the jury the impression that it was more important to be quick than to be thoughtful." *Valentine*, 488 F.3d at 336.

   The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

### D.    Jury improperly deliberated on hearsay evidence

Next, petitioner contends that the jury considered hearsay evidence that the judge excluded.  The petition does not set forth the substance of the hearsay evidence.  However, after reviewing petitioner's pro per supplemental brief filed in the state appeal, it appears that he is referring to statements made by the doctor who examined the victim after the sexual assault.  Pro Per Supp. Brief at 4 (docket no. 25).  As previously discussed, the jurors obtained a transcript of the doctor's testimony on the last day of deliberation.

The Michigan Court of Appeals addressed the issue as follows:

In his pro per brief on appeal, defendant argues that the jurors denied him his state and federal due process right to a fair trial by deliberating on hearsay evidence the trial court instructed them not to consider. After deliberations began, the jury sent the court a note with the following request: "Is it possible to have clarification from the doctor's testimony of where the grandmother, [the victim] indicated to her she had spent the previous ten days, with Rush Wilson or with the mother, with Felicia or Althea." The court reminded the jury that what the grandmother may have said about the victim's whereabouts during this ten-day period was inadmissible hearsay that they are not to consider. The court also reminded the jury that a stipulation had been entered that the grandmother had no information about if and when the alleged sexual abuse occurred.

The jury then asked for the treating physician's testimony, with one juror indicating "that what we're looking for might be better answered by the doctor's testimony." During the doctor's testimony, reference was made to a note in the treatment report indicating when the abuse occurred. A hearsay objection was immediately raised by defendants and sustained by the trial court. When the prosecution later tried to get the doctor to again testify about what the treatment report indicated about the time frame of abuse, the court instructed the prosecution that the information was not obtained from the victim and was thus inadmissible. Throughout her testimony, the doctor indicated that she had not written down any information about when the abuse occurred.

It is unclear from the record why the jury wanted the doctor's testimony for review. It seems that the jury was initially trying to pinpoint where the victim was prior to being examined by the doctor. However, it is clear from the testimony that the doctor had no admissible information on this matter. If the jury was seeking what the grandmother had said about the victim's whereabouts, then they either

misunderstood or disregarded the court's instructions on hearsay. There is not, however, conclusive proof that this information was what they were seeking. If they were seeking information that the doctor had received from the victim, then there is no hearsay problem.

We hold that defendant has failed to establish an error requiring reversal. First, defendant fails to establish that the jury did consider improper evidence. Second, assuming that the jury did consider evidence it was instructed not to, we conclude that this error was harmless. After reviewing the record, we conclude that the weight of the admissible evidence outweighed any reasonable probability that the allegedly inadmissible evidence affected the outcome of the trial. *See People v. Sykes*, 229 Mich.App 254, 273-274; 582 NW2d 197 (1998).

*People v. Wilson*, No. 228263, slip op. at 3-4.

Petitioner's claim is without merit. First, the Michigan Court of Appeals determined that petitioner failed to establish that the jury considered the improper evidence. A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). Petitioner presents no evidence that the jurors improperly relied on hearsay evidence in reaching their verdict. Second, the jurors are presumed to have followed the trial court's rulings on the hearsay objections. *See generally, United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002) ("[j]uries are presumed to follow the instructions they are given").

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### E.    Defense counsel's inability to prove the victim's whereabouts

Finally, petitioner alleges ineffective assistance of counsel for failing to prove that the victim was not with him for the 10 days prior to her July 11th medical examination. Because the allegations in the amended habeas petition are difficult to decipher, the court will look to petitioner's pro per state appellate brief for guidance in construing his claim. In this brief, petitioner contends that his defense counsel failed to adequately investigate and discredit the doctor's report:

> The information [in the doctor's medical report] was crucial to [petitioner], because in the doctor's report it listed a period of ten days which were prior to the time [the victim] was taken to the hospital is when [petitioner] molested her. This is untrue. [Petitioner's] grandmother['s] funeral was on July 7, 1998. The [victim's] visit to the hospital was on July 11, 1998. [The victim] had to be with grandmother [i.e., Constance Howard] on the 6 July 1998, because [petitioner] did not want them to bring [the victim] to the funeral. (T II, 55-58). This information would have informed the jury that the alleged molestation, and the time period stated by the opposing party [i.e., the prosecutor] to which the doctor based her opinion on that [the victim] was molested during the said time period is false.

Petitioner's Pro Per Supplemental Brief at 13. Petitioner also contends that the jury would have found him more credible if defense counsel would have investigated "the persons who had anything to do with the doctor's report as witnesses." *Id.* at 14.

The Michigan Court of Appeals addressed this issue as follows:

> Defendant also argues in pro per that trial counsel was ineffective for allegedly not investigating the victim's whereabouts during the ten days preceding her visit to the hospital. Specifically, defendant alleges that counsel failed to discover and present evidence that the victim was with her grandmother for one of the days in the week immediately before the abuse was discovered by the emergency room physician. Again, because defendant failed to move for either a new trial or a *Ginther* hearing, our review of his claim is limited to the existing record. *Nantelle*, *supra* at 87.
>
> Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999). A criminal defendant is denied the effective assistance of counsel by his attorney's failure to investigate and present a

17

meritorious defense. *See People v. Newton (After Remand)*, 179 Mich.App 484, 491; 446 NW 487 (1989). A substantial defense is one that might have made a difference in the outcome of the trial. *People v. Kelly*, 186 Mich.App 524, 526; 465 NW2d 569 (1990). The fact that a strategy does not work does not render its use ineffective assistance of counsel. *People v. Kevorkian*, 248 Mich.App 373, 414-415; 639 NW2d 291 (2001).

Defendant has failed to show that the alleged information about the victim's whereabouts for one day would have provided him with a substantial defense that might have made a difference in the outcome of the trial. The doctor who treated the victim testified that the victim indicated that there had been approximately ten incidents of abuse. The doctor could not testify about when the abuse occurred. Assuming that the victim was with her grandmother for the day asserted does not preclude the occurrence of abuse during the other days of the week.

*People v. Wilson*, No. 228263, slip op. at 4.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. As a general rule, defense counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

As an initial matter, the trial transcript does not contain the precise chronology as represented by petitioner in his pro per brief. Petitioner testified that the victim spent two nights at his residence in 1998 and that he did not molest her. Trial Trans. II at 50, 56-58. However, petitioner gave few details of the events prior to July 11, 1998, merely testifying: that his grandmother died in "July 1998"; that he and Constance Howard "were not getting along during July of 1998"; that petitioner did not want the victim to attend his grandmother's funeral; and, that

18

Constance Howard allowed the victim to attend the funeral against his wishes.  Trial Trans. II at 55-58.

Petitioner does not explain how additional investigation of other hospital employees that might have attended the victim on July 11, 1998 would have buttressed his vague testimony and rendered it more credible.  It is undisputed that the victim lived with her legal guardian, Constance Howard.  Trial Trans. I at 151-52.  Constance Howard testified that the victim visited petitioner "lots of times," perhaps every other weekend, either at his girlfriend's house or his mother's house.  *Id.* at 155-57.  Based on this testimony, petitioner, his girlfriend, his mother and Constance Howard would be the four individuals who possessed personal knowledge of the victim's whereabouts prior to July 11th.  Petitioner has failed to show how additional investigation of hospital employees that may have seen the victim could establish the victim's location for the ten days prior to July 11th.  Accordingly, it was not unreasonable for defense counsel not to spend time investigating hospital employees with respect to this issue.

Even if the court found that defense counsel had been deficient for failing to investigate the nurses, residents or other hospital employees that might have seen the victim on July 11th, petitioner was not prejudiced, because the victim identified petitioner as the perpetrator and the medical evidence supported her claims.  Although the victim was unable to identify the specific dates of the assaults, she testified that petitioner assaulted her "a lot," that he instructed her not tell anyone, and that petitioner was the only man to "do things to [her] private parts" or "do anything to [her] behind."  *Id.* at 137-42.  The victim testified that petitioner made her put Vaseline on both of her "private" parts.  *Id.* at 134.  She testified that petitioner tried to "put his private part" in her "front" and "back," graphically described the mechanics of such acts, and stated that it hurt.  *Id.* at

135-36.  When the victim decided that she did not "want it to happen again," she told Constance

Howard, who then took the victim to the hospital.  *Id.* at 141.

During the July 11th examination, the victim told the doctor that she "has been in her

father's house for the past ten days."  Trial Trans. II at 9, 16.  The doctor's examination revealed that

the victim's labia minor was "a little bit red," which could have been a matter of hygiene.  *Id.* at 13.[2]

However, her hymen did not have the "thin delicate margin" of a six-year-old, but was "a little bit

thicker than you would expect."  *Id.* at 13-14.  The thickness of the hymen could be a normal

variance or could be consistent with friction caused by a male penis rubbing up against it.  *Id.* at 14.

The doctor later testified that such a thickened hymen in a six-year-old would be unusual, and that

regardless of the reason for an examination, the "first thing you think of" with a thickened hymen

is sexual abuse.  *Id.* at 27.  The thickened hymen was also consistent with the victim's statement that

"there were fingers being inserted in her hymen."  *Id.*  The doctor testified that the use of Vaseline

could prevent abrasions and eliminate some evidence of sexual abuse.  *Id.* at 30.  The doctor further

testified that in her experience of examining hundreds of sexual abuse victims, she finds few

physical injuries:

> Most of the time the sexual abuse that takes place, the perpetrator doesn't penetrate.
> They don't have sex with a child like they would with a woman.  It's more fondling.

*Id.* at 31-32.

The victim had a normal rectal examination.  *Id.* at 15-16.  However, the doctor

testified that a man can put his penis "right up against the rectum" without injury to the child,

because there is a certain amount of elasticity in the rectum. *Id.* at 16.  The lack of injury to the anus

---

[2] The doctor explained the anatomy of the female genitalia as follows, "it starts out there's a labia
majora, which are the two thickened lips most external, and then as you go in progressively interior there are
smaller lips, which are called the labia minora."  Trial Trans. II at 11.

did not mean that the victim was not penetrated, but only that she was not penetrated recently.  *Id.* The doctor referred the matter to Protective Services because it involved alleged sexual abuse.  *Id.* The doctor further testified that the basis for her medical diagnosis of sexual abuse was that the victim had been at petitioner's residence for approximately ten days.  *Id.*

The victim's statement that she had been at petitioner's house for ten days prior to the medical examination was clearly relevant to the doctor's diagnosis of sexual abuse. However, nothing in the record indicates that the doctor would have changed this diagnosis if the victim had been at petitioner's residence for less than ten days.  The doctor's examination, specifically the victim's thickened hymen, was consistent with the victim's testimony that petitioner sexually abused her.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

## IV.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  January 3, 2008                                    /s/ Hugh W. Brenneman, Jr.
                                                           HUGH W. BRENNEMAN, JR.
                                                           United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).